Territorial Law Library

**IN THE SUPERIOR COURT OF GUAM**

PEOPLE OF GUAM,

    vs.

HENRY C. FLORES et. al.,

    Defendants.

)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. CF0133-09

**DECISION AND ORDER**
(Defendant Joaquin Q. Castro's
Motion to Dismiss for
Insufficient Evidence )

This matter came before the HONORABLE VERNON P. PEREZ on May 5, 2009 on Defendant Joaquin Q. Castro's Joinder in Defendant Juan L.G. Diaz's Motion to Dismiss for Insufficient Evidence. Assistant Attorney General Jeffery Moots and Assistant Attorney General Clyde Lemons were present for the Prosecution Division. Attorney Thomas J. Fisher was present with Defendant Joaquin Q. Castro. Attorney Samuel S. Teker and Attorney Joshua D. Walsh were present with Defendant Juan L. G. Diaz and Defendant Raynold C. Alcantara. Attorney Howard Trapp was present with Defendant Esmeralda A. Sabinay. Attorney Joaquin C. Arriola, Jr., was present with Defendant Benedette C. Santos. Attorney Rachel Taimanao-Ayuyu was present with Defendant Vincent G. Perez. Attorney Lewis W. Littlepage was present with Defendant Henry C. Flores. Attorney Julie C. Rivera, representing Defendant Luke Tonaichy, was also present. The Court took the motion under advisement. After having heard the parties' arguments, considering the parties' pleadings and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On March 12, 2009, Defendant Joaquin Q. Castro (hereinafter "Defendant Castro") was indicted, along with nine other co-defendants, with one charge of Conspiracy to Commit Aggravated Assault (as a 2nd Degree Felony) in violation of 9 G.C.A. §§ 13.30 & 13.60 (a).

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09        - Page 1 of 11 -

Defendant Castro, along with three of the nine other co-defendants, was also charged in the indictment with the substantive offense of Aggravated Assault (as a 2nd Degree Felony), in violation of 9 G.C.A. §§ 19.20 (a) (1) and (b). The indictment stems from the alleged assault of a teenage boy being held at the Dededo Precinct and the alleged conspiracy to cover up the assault. An arraignment was held on March 25, 2009 where Defendant Castro asserted his right to a speedy trial.

On April 15, 2009, co-defendant Juan L.G. Diaz filed Defendant Diaz's Motion to Dismiss for Insufficient Evidence (hereinafter "Motion to Dismiss"). On April 23, 2009, Prosecution filed People's Opposition to Defendant Juan Diaz's Motion to Dismiss. On May 4, 2009, Defendant Castro filed Defendant Castro's Joinder in Co-Defendants' Motions, in which he joined in co-defendant Juan L.G. Diaz's Motion to Dismiss. A hearing on the Motion to Dismiss was held on May 5, 2009. At the May 5, 2009 hearing, Defendant Castro waived his right to a speedy trial. On May 7, 2009, Prosecution filed People's Opposition to Defendant Joaquin Q. Castro's Motion to Dismiss (hereinafter "Opposition").

**DISCUSSION**

Section 50.54 of Title 8 of the Guam Code Annotated (G.C.A.) sets forth the standards for an indictment and provides that:

**§ 50.54. Form of Indictment: Standards for Indicting.**

(a) An indictment is an accusation in writing, presented by the grand jury to a competent court, charging a person with a felony or a felony and a related misdemeanor.

(b) The grand jury *shall* find an indictment when from the evidence presented there is reasonable cause to believe that an indictable offense has been committed and that the defendant committed it.

8 G.C.A. §50.54

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 2 of 11 -

"Reasonable cause amounts to evidence such that a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." People v. Grajo, 1987 WL 109393 at * 2 (D. Guam App. Div. 1987) (citations omitted). A reviewing court should uphold an indictment "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." Id.

Defendant Castro is charged by way of an indictment, with one charge of Aggravated Assault (as a 2nd Degree Felony), in violation of 9 G.C.A. §§ 19.20 (a) (1) and (b) and one charge of Conspiracy to Commit Aggravated Assault (as a 2nd Degree Felony) in violation of 9 G.C.A. §§ 13.30 & 13.60(a). 9 G.C.A. § 13.30 sets forth that:

**§ 13.30. Conspiracy: Definition.**

A person is guilty of conspiracy to commit a crime if:

(a) he agrees with one or more other persons that he or one of them will engage in conduct which constitutes such crime;

(b) he does so with the intention of engaging in, promoting or assisting in the conduct which constitutes such crime; and

(c) he or one of them performs an overt act in pursuance of the agreement.

9 G.C.A. §13.30

In the Motion to Dismiss, Defendant Castro argues, by joinder, that the indictment should be dismissed because no evidence was presented to the grand jury showing an agreement, as an element of the offense of conspiracy, as set forth in 9 G.C.A. § 13.30 (a). Specifically, Defendant Castro argues, by joinder, that no evidence whatsoever was presented to the grand jury that he agreed with any of his co-defendants to commit the crime which he is charged with. Defendant Castro concludes, by joinder, that this lack of any evidence mandates that the grand jury cannot

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 3 of 11 -

find probable or reasonable cause to support a charge of conspiracy, and the indictment must be dismissed.

Prosecution argues in the Opposition that the evidence was sufficient to establish probable cause in this case for a conspiracy indictment and an aggravated assault indictment. Prosecution points out, relying upon the holdings in Interstate Circuit v. United States, 306 U.S. 208 (1939) and United States v. Cabrera, 116 F.3d 1243 (8th Cir. 1997), that since prosecution seldom has direct testimony that parties entered into an agreement to be involved in criminal activity, prosecution need only show some degree of knowing involvement or cooperation by the defendant. Prosecution sets forth in the Opposition that the testimony before the grand jury showed that Defendant Castro committed a number of overt acts, in furtherance of the conspiracy charged herein. Specifically, Prosecution argues that Defendant Castro struck the teenage boy when he was arrested and beat the teenage boy in the hallway of the Dededo Precinct.

The law governing conspiracy cases is quite clear in that each element of conspiracy may be established by circumstantial evidence or reasonable inferences from the evidence presented. Glasser v. U.S., 315 U.S. 60, 80 (1942) (holding that "[p]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a development and collocation of circumstances."); U.S. v. Daychild, 357 F.3d 1082, 1097 (9th Cir. 2004) (internal quotations omitted); U.S. v. Calabrese, 825 F.2d 1342, 1348 (9th Cir. 1987) (holding that "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of a defendant's actions.") To obtain a conviction for the crime of conspiracy, the evidence may be entirely circumstantial or inferentially established by proof of the conduct, circumstances, actions and the relationship of

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                     - Page 4 of 11 -

the parties so charged. See, People v. Herrera, 98 Cal. Rptr. 2d 911, 922 (Cal. App. 2000); State v. Abdullah, 967 A.2d 469, 475 (R.I., 2009). The law recognizes that circumstantial evidence is the usual mode of proving a conspiracy since it is not often that direct evidence can be had. Diaz-Rosendo v. U.S., 357 F.2d 124, 129 (9th Cir. 1966) (holding that the existence of a conspiracy can rarely be proved in any other way); Com. v. Lonardo, 2009 WL 1857339 at *2, 74 Mass. App. Ct. 566 (Mass. App. Ct., 2009) (holding that the "acts of different persons who are shown to have known each other, or to have been in connection with each other, directed towards the accomplishment of the same object may be satisfactory proof of a conspiracy.")

As to the element of an agreement, the law is clear that the existence of a formal agreement between co-conspirators need not be proved because it is only in rare instances that a conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. See, People v. Vu, 49 Cal. Rptr. 3d 765, 777 (Cal. App. 2006); State v. Millan, 966 A.2d 699, 706 (Conn., 2009). The requisite agreement may be inferred from proof of the separate acts of the individuals accused as co-conspirators and from the circumstances surrounding the commission of the acts. See, People v. Bogan, 62 Cal. Rptr. 3d 34, 36-37 (Cal. App. 2007). The existence of a tacit or mutual understanding between co-conspirators is also sufficient to establish a conspiratorial agreement. U.S. v. Kellam, 568 F.3d 125, 139 (4th Cir. 2009); State v. Hall, 669 S.E.2d 30, 37-38 (N.C. App., 2008) (holding that evidence of a mutual, implied understanding will satisfy the agreement element of conspiracy and may be inferred from the defendant's behavior.) Prosecution can show the existence of an agreement necessary to support a conspiracy conviction via circumstantial evidence and inferences based on the conduct of those allegedly involved in the scheme. See, U.S. v. Kiriki, 756 F.2d 1449, 1453 (9th Cir. 1985); U.S. v. Seher, 562 F.3d 1344, 1364 (11th Cir. 2009).

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 5 of 11 -

In State v. Millan, 966 A.2d 699 (Conn. 2009), the Connecticut Supreme Court addressed the issue of whether there was sufficient evidence to support the defendant's conviction for conspiracy to commit assault in the first degree. The court set forth that while the state must prove an agreement to commit assault, the existence of a formal agreement between the conspirators need not be proved because it is only in rare instances that conspiracy may be established by proof of an express agreement to unite to accomplish an unlawful purpose. Id. at 706. The court held that the requisite agreement may be inferred from proof of the separate acts of the individuals accused as co-conspirators and from the circumstances surrounding the commission of these acts. Id. The court also held that a co-conspirator's conduct at the scene can provide the requisite evidence of an agreement. Id. at 707.

In Harris v. State, 968 A.2d 32 (Del. 2009), the Delaware Supreme Court addressed the issue of whether the evidence was sufficient to support a defendant's adjudication of delinquency for conspiracy in the second-degree and attempted first–degree robbery. Prosecution claimed that the defendant was a 'lookout' during the robbery, while the defendant claimed he was 'looking at' an unfortunate event unfolding before his eyes. The court held that it is not necessary that there be a formal agreement in advance of a crime. Id. at 36. The court held if a person understands the unlawful nature of the acts taking place, and nevertheless assists in any manner in carrying out the common scheme, that person becomes a conspirator to commit the offense. Id. The court found that there was sufficient evidence in the record to support the trial judge's conclusion that the defendant understood the unlawful nature of the acts taking place and assisted in carrying out the common scheme, even if only as a lookout. Id. at 37.

Defendant Castro's argument, by joinder in the Motion to Dismiss, that Prosecution failed to present evidence to the grand jury establishing the specifics of the alleged agreement

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 6 of 11 -

overlooks general principles of law, hereinbefore discussed, that clearly set forth that Prosecution need not detail the specifics of the agreement to commit conspiracy. On the contrary, the existence of the illegal agreement may be proved by circumstantial evidence or be inferred from the facts and circumstance of the case. U.S. v. Hernandez, 876 F.2d 774, 777 (9th Cir. 1989); Aguilera v. State, 667 S.E. 2d 378, 381-382 (Ga. App., 2008) (holding that a tacit understanding may be proved by circumstantial evidence, inferred from the nature of the acts done, the relationship of the parties, the interest of the alleged conspirators and other circumstances). Prosecution is not required to show that a conspiracy agreement was explicit, an implicit agreement may be inferred from the facts and circumstances of the case. U.S. v. Restrepo, 930 F.2d 705, 709 (9th Cir. 1991) (citations omitted). The law equally recognizes that participation in an illegal combination need not be proved by direct evidence, and a person may be held as a conspirator although he joins the criminal concert at a point in time far beyond the initial act of the conspirators. Lile v. U.S., 264 F.2d 278, 279-281 (9th Cir. 1958) (holding that if a person joins a criminal concert later, knowing of the criminal design, and acts in concert with the original conspirators, he may he held responsible not only for everything which may be done thereafter, but also for everything which has been done prior to his adherence to the criminal design.)

After reviewing the grand jury taped proceeding and considering the evidence presented to the grand jury, this Court finds that sufficient evidence was presented to support the charge of conspiracy against Defendant Castro. During the grand jury proceedings in this case, held on March 12, 2009, Prosecution called five witnesses to testify about the events that took place at the Dededo Precinct on the evening of November 22, 2008 and the early morning of November 23, 2008, as well as the follow-up investigation. Grand jury witness Kevin Quintanilla testified

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                     - Page 7 of 11 -

that Defendant Castro was one of the Guam police officers that removed the teenage boy from a holding cell prior to the alleged beating. (Grand Jury Recording at 3:12 p.m.). Kevin Quintanilla testified that he saw, out of the corner of his eye, someone hit the teenage boy. (Grand Jury Recording at 3:12 p.m.) Kevin Quintanilla testified that when the teenage boy was returned to a holding cell, it was obvious that he had been beaten. (Grand Jury Recording at 3:14 p.m.). Kevin Quintanilla testified that the teenage boy was not offered any medical aid by any of the police officers after the beating. (Grand Jury Recording at 3:14 p.m.).

The teenage boy testified that as he was returning to the holding cell, he was severely beaten by a number of police officers in the hallway. (Grand Jury Recording at 2:56-2:59 p.m.). Special Agent Kuper testified that the teenage boy identified Defendant Castro as one of the Guam police officers that severely beat him in the hallway. (Grand Jury Recording at 3:36 p.m.). Special Agent Kuper testified that the teenage boy reported that Defendant Castro told him that if he went to the hospital for his injuries, that he would have to go to DYA instead of being released. (Grand Jury Recording at 3:36 p.m.).

Special Agent Cruz testified that during the course of his investigation, he secured the Dededo Precinct log book. (Grand Jury Recording at 4:18 p.m.). Special Agent Cruz testified that the Dededo Precinct log book is an official document and record kept by the Guam Police Department. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that in the log book, there is an entry that states that the teenage boy "was later released to his parents." (Grand Jury Recording at 4:18-4:19 p.m.). Special Agent Cruz testified that to the best of his knowledge, the log book entry was prepared by co-defendant Vincent G. Perez. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that co-defendant Henry C. Flores signed the log book, as the shift supervisor that night. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 8 of 11 -

testified that the entry in the log book was a false entry as to what happened to the teenage boy. (Grand Jury Recording at 4:19 p.m.). Special Agent Cruz testified that the teenage boy was not released to his parents, but was transported to Guam Memorial Hospital by medics, after he kept losing consciousness. (Grand Jury Recording at 4:18 - 4:21 p.m.).

Kevin Quintanilla testified that he was later told by co-defendant Henry C. Flores that someone from the Guam Police Department would be coming to talk to him about what happened that evening. (Grand Jury Recording at 3:14 p.m.). Kevin Quintanilla testified that co-defendant Henry C. Flores instructed him to say that nothing happened and that he didn't see anything. (Grand Jury Recording at 3:14 -3:15 p.m.). Kevin Quintanilla testified that co-defendant Henry C. Flores made it clear that he was to lie to any of the investigating officers about what happened that evening. (Grand Jury Recording at 3:14-3:15 p.m.). Kevin Quintanilla testified that he heard co-defendant Henry C. Flores give co-defendant Benedette C. Santos the same instruction, to lie to investigators. (Grand Jury Recording at 3:15 p.m.).

Special Agent Cruz testified that Defendant Castro reported that he saw co-defendant James V. Quenga and the teenage boy standing in the hallway and that he thought the teenage boy was going to punch co-defendant James V. Quenga. (Grand Jury Recording at 4:16 p.m.). Special Agent Cruz testified that Defendant Castro reported that he tackled the teenage boy in the hallway and took him to the floor. (Grand Jury Recording at 4:16-4:17 p.m.). Special Agent Cruz testified that Defendant Castro reported that he thought the teenage boy struck a door jam or door frame with his left side when falling to the floor. (Grand Jury Recording at 4:16-4:17 p.m.). Special Agent Cruz testified that Defendant Castro reported that only co-defendant James V. Quenga witnessed the tackle of the teenage boy. (Grand Jury Recording at 4:17 p.m.). Special

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                - Page 9 of 11 -

Agent Cruz testified that Defendant Castro reported that he didn't see anything inappropriate happen that evening. (Grand Jury Recording at 4:18 p.m.).

Special Agent Cruz testified that Defendant Castro's report was inconsistent with the report given by co-defendant James V. Quenga. (Grand Jury Recording at 4:18 p.m.). Special Agent Cruz testified that co-defendant James V. Quenga, or any of the other co-defendant police officers, ever reported that Defendant Castro tackled the teenage boy outside the hallway. (Grand Jury Recording at 4:18 p.m.). Grand jury witness Dr. Espinola, Chief Medical Examiner for the Territory of Guam, testified that he was called upon by the Guam Police Department to determine the nature of the injuries to the teenage boy. (Grand Jury Recording at 3:17-3:19 p.m.). Dr. Espinola testified that the teenage boy's injuries to his spleen could not have been caused by being tackled and possibly hitting a door jam or door frame during the fall to the ground. (Grand Jury Recording at 3:21 p.m.; 3:24- 3:25 p.m.). Dr. Espinola testified that the teenage boy's injuries to the spleen had to have been caused by a hard blow from either a hard kick or a forceful uppercut punch. (Grand Jury Recording at 3:21-3:22 p.m.).

Based upon the testimony presented, this Court finds that it was reasonable for the grand jury to find that Defendant Castro was part of the underlying conspiracy. Testimony before the grand jury demonstrated that Defendant Castro was one of the police officers who removed the teenage boy from the holding cell, prior to the alleged assault. Testimony before the grand jury demonstrated that Defendant Castro was one of the police officers who severely beat the teenage boy in the hallway of the Dededo Precinct. Testimony before the grand jury demonstrated that Defendant Castro's report about allegedly tackling the teenage boy in the hallway, directly conflicted with the testimony of Dr. Espinola, the teenage boy and the report filed by co-defendant James V. Quenga. While it is true that presence alone is not enough to convict, a

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09                    - Page 10 of 11 -

single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy. See, U.S. v. Gilmer, 534 F.3d 696, 702 (7th Cir. 2008).

Based on the evidence presented to the grand jury, the Court finds that there is some rational ground for assuming the possibility that an offense, as charged, was committed and that the accused is guilty of it. The evidence presented provided sufficient information for the grand jury to find reasonable cause that Defendant Castro allegedly committed the offense that he is charged with. This Court finds that a conscientious jury could clearly have had a strong suspicion that Defendant Castro committed the crime he is charged with.

**CONCLUSION**

For the foregoing reasons, Defendant Joaquin Q. Castro's Motion to Dismiss for Insufficient Evidence, by joinder, is hereby DENIED.

So ORDERED this day of 2S July, 2009.

<hr>

HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

Dated at Hagatna, Guam

_____ 20

Tammy L. Piranha
Deputy Clerk, Superior Court of Guam

*People v. Flores et. al*
Decision and Order (Defendant Joaquin Q. Castro's Motion to Dismiss)
Criminal Case No. CF0133-09          - Page 11 of 11 -